0D938 - G37 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

IN FRANKLIN COUNTY COURT of COMMON PLEAS
CIVIL DIVISION
373 SOUTH HIGH STREET
COLUMBUS, OHIO 43215

RALPH A. APPLEGATE
1544 ZETTLER ROAD
COLUMBUS, OHIO 43227
Plaintiff

Case No.

Versus

CIVIL ACTION
DEMAND FOR JURY TRIAL

MONSANTO COMPANY
800 NORTH LINDBERGH BLVD
ST. LOUIS, MISSOURI, 63167
Defendant

COMPLAINT

PARTIES

1. Plaintiff is age 85, has been a gardener, and is a citizen of Columbus, Ohio. Plaintiff purchased Roundup at Lowe's, 3616 East Broad Street, Columbus, Ohio, 43223, shortly before using Roundup at Plaintiff's residence. Plaintiff became sick from Roundup, February 18, 2009, because Plaintiff had been exposed to Roundup about 4.5 months prior to February 18, 2009. Including from early October, 2008 until February 18, 2009, Plaintiff was exposed at 1544 Zettler Road, Columbus, Ohio, 43227 to full strength registered Roundup, including its surfactant ingredient polyethoxylated tallow amine. Plaintiff, in October, 2008, used Roundup by inserting a toothbrush into full strength Roundup and then inserting that toothbrush full of Roundup into living cut stalks of bamboo, on an area of about 5 feet by 35 feet. That bamboo died very quickly after Plaintiff inserted Roundup into it.

p.1

2. On or about March 9, 2009, Dr. Sandra Pinkham, Columbus, Ohio Toxicologist, and Physician, examined Plaintiff's blood on a microscope, and found that " Ralph, I never before this in my life ever saw any blood like this."

3. On or about May 9, 2009, Dr. Craig Hofmeister, Oncologist, James Cancer Center, Columbus, Ohio, diagnosed Plaintiff with Waldenstrom's Macroglobulinemia, a very rare Non Hodgkins Lymphoma. Plaintiff suffered, and still suffers effects attendant thereto, as a direct and proximate result of unreasonably dangerous and wrongful nature of Roundup, and Defendant's wrongful and negligent conduct in research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of Roundup.

4. As a direct and proximate result of these injuries, Plaintiff has incurred already medical expenses of about $1,500,000., and will continue to incur future medical expenses, has endured and will continue to endure pain and suffering and loss of enjoyment of life, and Plaintiff has been damaged, personally.

5. During time that Plaintiff was exposed to Roundup in 2008, Plaintiff did not know that exposure to Roundup and its other ingredients was injurious to his health or health of others, and that as late as September 22, 2017 at 11:45 p.m., Plaintiff did not know of full extent of Roundup damages other than a March 20, 2015 claim of World Health Organization that " Glyphosate was classified probably carcinogenic to humans ". their conclusion .World Health Organization is not known to Plaintiff to have stated any basis whatsoever in World Health Organization' report, or not, for its conclusion Therefore Plaintiff does, or does not, rely on that report

p.2

0D938 - G39 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

Plaintiff relys on fact that 31 Couples, 62 Plaintiff's, In "Harley", United States District Court, Northern District of California Case No. 3-17-cv-03750, of 86 Plaintiff's, were exposed to and were diagnosed in various districts with Non Hodgkins Lymphoma as proof for a Directed Verdict. Plaintiff is referring to "Individual causation ", " Individual causation " refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance ." In Plaintiff's and in 62 married Plaintiffs, not forgetting those 24 other single Plaintiff's in " Harley " U.S.D.C., Northern District of California, MDL Case No. 02741 -VC, Plaintiff is referring to these 86, plus one, Plaintiff's. Plaintiff Applegate, as those Plaintiff's who were particular individuals who suffered from a particular rare ailment(NHL)as a result of exposure to Roundup. And decision as to causation is related to "individual causation ". Except in this case, Plaintiff Applegate's ailment, Waldenstrom's Macoglobulinemia, is slightly, apparently, somewhat more rare than those who have Non Hodgkins Lymphoma. Plaintiff does not know anything, in detail, more, about those other about 837 Plaintiff's in those 10 other cases in MDL-02741 -VC. Plaintiff has not seen those Dockett's.

6. Defendant Monsanto Company("Monsanto")is a Delaware Corporation with its headquarters and principal place of business in St. Louis, Missouri .On information and belief, important scientific, manufacturing, marketing ,sales, and other business decisions regarding Roundup were made from and in state of Missouri. At all times relevant to this complaint, Monsanto was an entity that discovered herbicidal properties of glyphosate, and surfactant polyethoxylated tallowamine, as well as adjuvants and inert ingredients, in time to begin manufacturing Roundup before 1974.

p.3

0D938 - G40 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

## JURISDICTION

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Chapter 1332 Plaintiff seeks damages in excess of $15000, exclusive of interest and costs

8. This Court has personal jurisdiction over Monsanto who is authorized and licensed to conduct business in and from state of Ohio, maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of benefits of this judicial district, as well as all other states of our United States. This Court also has personal jurisdiction pursuant to Franklin County Ohio Common Pleas Court Rule 33.12. Monsanto was conducting business in Ohio at time of Plaintiff's Roundup exposure, in October, 2008.

9. Monsanto caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district. Monsanto consents to negotiate and be sued in Ohio.

## VENUE

10. Venue is proper before this Court pursuant to 28 U.S.C. Chapter 1391 because a substantial part of events or omissions giving rise to this claim occurred within this district

11 Plaintiff, residing at 1544 Zettler Road, Columbus, Ohio, 1st used, and was 1st exposed at that address and injured by Roundup by wrongful acts and wrongful conduct by Monsanto

p.4

0D938 - G41 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

## STATUTE of LIMITATIONS

12. Plaintiff did not learn of any early fact that would toll statute of limitations in Ohio except that Plaintiff observed on Internet on September 22, 2017, at 11:45 p.m., that World Health Organization had concluded that " Glyphosate was classified probably carcinogenic to humans ". Important word is "probably ". Plaintiff has not, yet, observed, any basis, whatsoever, stated by World Health Organization proving, or by any other so claimed expert, that "Glyphosate was classified probably carcinogenic to humans " because of disagreement of said scientiff's. Further, Plaintiff is claiming, that Glyphosate is one ingredient in formulation of Roundup that has caused Waldenstrom's Macroglobulinemia, a very rare Non Hodgkins Lymphoma. Plaintiff is claiming that Plaintiff knew or reasonably should have known that Roundup caused Non Hodgkins Lymphoma by September 22, 2017, 11:45 p.m., but not earlier. History of study of Roundup is so contradictory that truth had not been known, but now is known, by 2017, even though Plaintiff claims that 31 couples, 62 Plaintiff's in " Harvey " were proven to have contracted Non Hodgkins Lymphoma from Roundup.

## HISTORICAL FACTS ARE A WEAPON

13. Acuera, a Florida Native American speaking to discoverer DeSoto, in 1524, " Man who has a quarrel with his neighbor must choose his weapon ." History of English Law II, 2nd Edition 1898, pp. 561, 563

14. In 1964, glyphosate was patented as a descaling agent for industrial boilers, those large ones manufactured by Babcock and Wilcox, an Ohio boiler maker, Plaintiff was a 1960

p.5

0D938 - G42  Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

employee of them , due to glyphosate's ability to combine with , and thus strip , minerals . United States Environmental Protection Agency was formed on December 2, 1970 by President Richard M. Nixon .Monsanto introduced glyphosate as a herbicide in 1970's . Thereafter , Monsanto Captured EPA ( And twisted science)to keep glyphosate on our market . Valerie Brown and Elizabeth Grossman , " In These Times " , November 1 , 2017 ,Plaintiff has insufficient logistic capability , himself , to file these documents .

15. Deaths have doubled of Non Hodgkins Lymphoma from 1975 to 2017 , but Plaintiff had not been advised before 2017 of this fact by anyone . Thus , risk odds have also doubled from 1975 to 2017 . Plaintiff handled Roundup for more than 7 days in a row, in October ,2008 , maybe 30 days. Plaintiff with Waldenstrom's Macroglobulinemia has a higher risk now in 2017 than Plaintiff had in 2008 when Plaintiff was 1st exposed to Roundup . Plaintiff had not been exposed to any other herbicide /pesticide than Roundup prior to 2008 or after . Plaintiff had been advised by Dr. Furman , in 2010 that Waldenstrom's was very rare . Although Dr. Furman knew Plaintiff used Roundup , Furman did not advise that Roundup was at fault .

16. Plaintiff Anthony Jackson McCall ,of a farm in Cambria , California , in California Case No. 2:16-cv-01609 , purchased Roundup in California over a period of 26 years from 1989 until 2015 , was exposed to Roundup over that same 26 years , but , did not learn of contracting Non Hodgkins Lymphoma until September , 2015 , McCall's dog died 9 years before McCall did ,and McCall died several months later on December 26 , 2015 . One of McCall's claims was Fraud . Enough is enough .

17. Roundup had a clear and significant risk when used for its intended purpose and causes rare Non Hodgkins Lymphoma side affects .

p.6

0D938 - G43    Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

18. Donna Farmer, Monsanto employee, in a 1999 secret internal e-mail, publicly released by Federal District Judge Vince Chabbria in 2017, which Plaintiff had not known of or reasonably should have known of until at least September 22, 2017 at 11:45 p.m., stated " I will not support doing any studies on glyphosate formulations or other surfactant ingredients at this time with limited information we have on this situation."

19. In another secret internal e-mail of April 25, 2002, at 10:47 a.m.," Bill " Heydens, Monsanto employee, stated to employee Donna Farmer "Your last comment hits exactly where I am coming from. We discussed that situation with Rolson and Desesso and concluded, not surprisingly, that we are in pretty good shape with glyphosate but vulnerable with surfactants. What I've been hearing from you is that this continues to be that case with these studies - glyphosate is OK, but formulated product (And thus that surfactant )does damage. We had a low-risk strategy to generically deal with that issue but couldn't implement it for budgetary reasons. In meantime, studies with endocrine / repro endpoints keep coming, so we should revisit that issue. Can we scale back a repro study to make it budgetarily palatable ? Is there something less expensive we can do ? Or do we stand pat and take our lumps as they come ? Unfortunately, we do not get to choose what gets dignified outside our 4 walls and what doesn't (Which Defendant employees above 4 walled employees Bill Heydens and Donna Farmer were overseeing these discussions, was it Monsanto Board ?) We had a close call vis-a-vis in mutagenicity /European Union review a couple years ago. If we again decide to stay that course, I want this to be a well-reasoned, conscious and documented decision. "

20. Defendant officials higher up continued using polyethoxylated tallow amine in Roundup until very recently, exact date is not known.

p.7

0D938 - G44   Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

21. On March 22, 2003 in another Monsanto secret internal e-mail to other unstated employees, Ms. Donna Farmer, an employee and a Monsanto Toxicologist stated " You cannot say that Roundup is not a carcinogen ," a material fact. Farmer also stated "We(Monsanto)have not done necessary testing on its formulation to make that statement ." In another 2003 e-mail, Saturday, November 22, 2003 , 4:46 p.m. ,from Donna R. Farmer to Sekhar Natarajan, of a foreign country , stated " We can infer that there is no reason to believe that Roundup would cause cancer ." Donna Farmer cited no basis for this , another claim . Inference is not acceptable when lives are to be considered .

22. A paper in 2007 by scientist J. M. Brausch ,et . al , address not stated , stated " All polyethoxylated tallow amines were found to be extremely toxic ."

23. In a 2008 presentation , Monsanto titled its presentation " Monsantos Roundup acts on one of key stages of cellular division ,which can potentially lead to cancer in its long term . "

24. Contrarily to claims by others exposed to Roundup , this Plaintiff purchased Roundup in early October , 2008 , was directly exposed to Roundup only about 5 months until February 18 ,2009 , Plaintiff may have inhaled it , and this Plaintiff was diagnosed by Oncologist Craig Hofmeister on or about May 9, 2009 with Waldenstrom's Macroglobulinemia , a rare Non Hodgkins Lymphoma . Oncologist Richard R. Furman placed this Plaintiff on two(2) trials , one of just Plaintiff on a trial called ThRil , which included Revlimid , and Plaintiff , thereafter , reached an Immunoglobulin(IGM) level considered acceptable at an average number of 1250, compared to a number of 438 , called normal. Plaintiff is not classified as "in remission."

25. In another secret internal e-mail of 2010, Stephen Adams , Monsanto employee

p.8

Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000
0D938 - G45

Chemistry Regulatory Affairs Manager stated " With regards to carcinogenecity of our formulations we don't have such testing on them directly ." Meaning Monsanto may , or not learn from others

26. Dr. Richard R. Furman claimed in 2010 that Plaintiff was his worse patient because Furman had not seen another patient with an IGM level of 11000 , units not stated. It was a belief that it was Revlimid which was effective.

27 . Nevertheless , there is no evidence known to Plaintiff with respect to when other unknown sick persons exposed to Roundup will soon learn of cancer , or not

28. In another secret internal e-mail , of 2013 , Xavier Belvaux , Monsanto employee Regulatory Affairs Lead , stated and confirmed that " We(Monsanto) do not conduct sub-chronic , chronic , or terotogenicity studies with our (Roundup) formulations . "

29 . In another 2014 secret internal e-mail , Dr. William F. Heydens , Monsanto's Head of Product Safety , before International Agency for Research on Cancer evaluation of Glyphosate which announced later in 2015 that Glyphosate is a probable carcinogen , stated that " While we have vulnerability in area of epidemiology , we also have potential vulnerabilities in other areas International Agency for Research on Cancer will consider , namely ,exposure , genotox , and mode of action ." No evidence , either , has been asked for or has been produced proving that Heydens was sanctioned , or not , suggesting that higher up Defendants agreed with Heydens .

30. Defendant stated , on or after about April , 2014 , also when not exactly stated , that " Monsanto had already been preparing for a gradual transition away from polyethoxylated tallow amine to other types of surfactants for commercial reasons " , without identifying those reasons , as much as Monsanto admitting that Roundup , including surfactant polyethoxylated tallow

p.9

0D938 - G46  Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

amine, was known in or before 2014 to have been a cause of Non Hodgkins Lymphoma.

31. On September, 2014, Toxicologist Farmer stated in another secret internal e-mail " What we have been concerned about has happened." And that "Glyphosate is on for an International Agency for Research on Cancer review in March of 2015." Thus, Farmer was likely expressing concern that Defendant would be discovered falsifying about Roundup causing Non Hodgkins Lymphoma. No evidence has been asked for or produced that Farmer was sanctioned, or not.

32. In another internal e-mail of 2015, William F. Heydens, admitted to " Low level presence of formaldehyde " (Carcinogen by inhalation)in Roundup, and " Low level presence of NNG(N-nitroso-glyphosate)" in Roundup. Many N-Nitroso compounds are carcinogenic.

33. Internally, Heyden and Farmer had Roundup discussions, but when after that last 2015 e-mail not stated. Donna Farmer acknowledged " Interest point is glyphosate all basically had no effect that formulated product(Roundup)did, and asked - Does this point us to coformulants-surfactants ? " Defendants sold Roundup from when after 1970 until 2015 having polyethoxylated tallow amino as an ingredient while claiming no knowledge or not that that surfactant was a problem ? Sometime recently Defendant claimed it removed polyethoxylated tallow amine from Roundup, claiming its removal was for commercial reasons. Defendant still in 2017 objects to ordered warnings.

34. In another secret internal e-mail, also, when not stated, Donna Farmer summarized Monsanto's claimed expert, Dr. James Parry's conclusions " Dr. Parry concluded on his evaluation of four(4) articles that glyphosate is capable of producing genotoxicity both in vivo and in vitro by a mechanism based upon production of oxidative damage."

p.10

0D938 - G47 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

35 . In another secret 2015 internal e-mail , Heydens stated " Surfactant in formulation will come up in tumor promotion skin study because we think it played a role here . " Obviously there are more secrets that will be discovered . Plaintiff's lack of knowledge of more secrets does not excuse Defendants .

36 . Plaintiff recalls , but , Plaintiff can not find a Defendant statement made in about April , 2016 , that Defendant had then abandoned polyethoxylated tallow amine , but , exactly when not stated . Thus , Defendant had abandoned polyethoxylated tallow amine but too late to have stopped Defendant from damaging Plaintiff who contracted NHL in 2009 .

37. In " Harley " , 2017 California Case No. 3-17-cv-03750 ,62 Plaintiff's ,meaning 31 couples ,out of 86 Plaintiff's , were exposed to Roundup , and each was diagnosed with a Non Hodgkins Lymophoma by Oncologist's , and this Plaintiff had asked that Court by Intervening Motion of October10 , November 7 , and now December 4 , 2017 to rule against Defendants because that evidence , alone , is sufficient to rule that nothing else than Roundup had caused those Plaintiff's to have gotten NonHodgkins Lymphoma .Common knowledge jurors understand this and could effectively rule against Defendant in a jury trial . Enough is enough  If Plaintiff is correct that Defendant finally decided that it was polyothoxylated tallow amine which in that Roundup formulation was what caused Non Hodgkins Lymphoma it could be concluded that was defendants reason recently for removing polyethoxylated tallow amine from its new Roundup formulation . A request of Defendant to identify Defendants replacement surfactant is necessary. Plaintiff does not reverse his Intervening motion .

38 . In October 27 , 2017 , after 8 witnesses were deposed , in Harvey " , and had

p.11

0D938 - G48 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

essentially agreed that " Roundup causes NHL ". Plaintiff's lawyers claimed that " There is overwhelming evidence -whether it be epidemiology , toxicology , or mechanistic data - that exposure to glyphosate based formulations causes NHL ." Because those 8 witnesses did not cite any basis , whatsoever , for their conclusions , Plaintiff states that those unnamed basis are a requirement in conclusions reached in any study or in any problem solving , whatsoever .

39 . Some European governments have already begun , since when , taking action against polyethoxylated tallow amine . " One surfactant in particular is drawing heavy criticism . Polyethoxylated tallowamine is likely very toxic to humans , animals , and environment . But European Union has failed to take any action , whatsoever , as far as is known ." This is confusing . Martin Hausing , member of Greens/European Free Alliance Group says " Given alarming results of independent studies , this is simply shocking . Even though I(Martin Hausing) have been criticising European Food and Safety Authority for many years because of its conflict of interest with agricultural industry , it would be wrong to blame them alone . National authorities play a big role in this process . " These criticisms do not end .

40 . Plaintiff has already sought by e-mail to Defendant , on more than four(4) occasions in 2017, to settle with this Defendant .

41. Because Plaintiff is not represented by an attorney , Defendant will save at least 40 percent of Defendants legal expenses in this lawsuit if Defendant soon begins settlement .

### HISTORICAL FACTS ARE A WEAPON

42. Not anywhere ,whatsoever , had it been stated by scientists , oncologists , who studied rats ,or otherwise , and even Defendant , that any of those scientists , oncologists , or Defendant , also studied blood of rats , i. e. , took CBC's (Complete Blood Counts) ,of Hemoglobulin ,

p.12

0D938 - G49 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

WBC(White Blood Cells) , RBC(Red Blood Cells) , and IGM (Immunoglobulin), a marker for NHL , inter alia , and regularly recorded these blood counts . Plaintiff has 1st hand knowledge of this need to do this study . In Oncological treatment of NHL patients , after infusing another chemical , blood is studied by Oncologists to determine if Hemoglobulin , WBC , RBC , decreased or increased , and IGM to determine if it decreased , which was an expectation . An increase might cause a change in treatment ! Had those rat scientists done those blood studies of rats in those studies , and had they done so , should have proven , had rat IGM increased it was evidence that rats were getting NHL .This Court needs to know this . Plaintiff knows this because Plaintiff went thru this process with Dr. Richard Furman , Weill-Cornell Medical Center, Midtown , New York , from 2009 to at least 2013 .

43 .Environmental Protection Agency had possessed evidence of polyethoxylated tallow amine's toxicity for(many )years , including several reports of substantial risk to human health and our environment . One report , submitted in 1998, noted that 1000 fish died after 60 gallons of a mixture of chemicals including polyethoxylated tallow amine spilled into a ditch , according to company responsible for spill , whose name is redacted in that document . "EPA" itself said back in 1980's that glyphosate was linked to NonHodhkins Lymphoma . Farron Cousin's can be checked on his claim .

44. It was concluded in 2001, that "But , when Canadian authors assessed men with greater (Apparently that was accomplished in 2001?) than 2 days of glyphosate exposure per year , this , in retrospect included Plaintiff Applegate in 2008 , It revealed a significant risk doubling of NHL ." pp.33 upper right/26 bottom .There were 2 pagings on this document Plaintiff's "Harley " Response In Opposition To Monsanto Company Daubert and Summary

p .13

0D938 - G50 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

Judgment Motion (PROMDSJM) Aglan , this was known in 2001 but not to Plaintiff . Plaintiff has no knowledge , whatsoever , of what 923 Plaintiff's in " Harley "MDL No. 02741 know in 2001 , a question that needs to be asked and answered .

45. In 2002 , Swedish scientists concluded that " Exposure to glyphosate still posed greater risk factor for NHL, when compared to other pesticides ", pp . 33/26 PROMDJSM

46 .In 2003 , DeRoos , concluded " A statistically significant elevated risk between glyphosate use , and NHL ." pp. 33/25 PROMDSJM

47 .In September , 2014 , Securities and Exchange Commission in agreement with Defendant , paid so-called anonymous Whistleblower at $22,000,000. In connection with claimed Monsanto multiyear accounting violations , evidence of past Monsanto hyperbole .

48 . It had already been known in America on or before June , 2015 , except for Plaintiff that " There was overall almost a doubling of risk statistically significant if you handled a glyphosate for greater than two(2)days . " No factual stated basis for this conclusion is seen by Plaintiff , but , if Plaintiff would search thru thousands of documents that have already been searched by scientists named herein , Plaintiff may or not find this evidence ? Plaintiff claims Plaintiff claims Plaintiff handled Roundup , but full strength , of which glyphosate is an ingredient , in October , 2008 , for more than seven(7)days .

49 . Before October 27, 2017 , Epidemiologist , Dr. Beate Ritz ,using a "Bradford Hill Criteria " , concluded not soon enough for Plaintiff to avoid cancer , that " To a reasonable degree of scientific certainty, glyphosate causes NHL .Furthermore , to a reasonable scientific certainty , glyphosate based formulations , including Roundup , cause NHL . " pp. 10/3

p.14

0D938 - G51 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

PROMDSJM It had not been stated , or not , that Dr. Ritz stated facts for a basis for this conclusion , or that Dr. Ritz had known earlier .

50. Before October 27 , 2017 , practicing Oncologist , Dr. Alfred Neugut . Too late for Plaintiff 's to avoid cancer , using " Bradford Hill Criteria " , concluded that " Epidemiologic and scientific evidence currently available leads to a conclusion to a reasonable degree of scientific certainty for most expert , objective , and reasonable viewers (This would be jurors), myself included ,that use of glyphosate in its various combinations can cause Non Hodgkins Lymphoma . " Neugut also concluded " Many risk factors that(we)take very seriously in public health are really at that level of 1.3 and 1.4 , and even 1.2 , and we consider them significant carcinogens ". pp. 10/3 PROMDSJM No specific evidence was stated , even though Dr. Neugut referred to that word "scientific evidence " as a basis for those conclusions , nor was it stated , or not , that Dr. Nugent had known earlier .

51 . Before October 27 , 2017 , an animal Bioassayist , Dr. Christopher Portier , too late for Plaintiff's to avoid cancer , using "Bradford Hill Criteria " , concluded " In my opinion , glyphosate probably causes NHL , and given human , animal , experimental evidence , I assert that , to a reasonable degree of scientific certainty , probability that glyphosate causes NHL is high ," pp. 11/4 PROMDSJM Again , no specific evidence was stated for this opinion , nor was it stated , or not ,that Dr. Portier had known this earlier . This is 1st instance where "high " was used .

52 .Before October 27, 2017 , an Organic Chemist , that was his employment , Dr . Charles Jameson , also a rat Bioassayist , too late for Plaintiff's to avoid cancer , using a "Weight

p.15

0D938 - G52   Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

of evidence methodology ", concluded that " To a reasonable degree of scientific certainty that glyphosate and glyphosate formulations are probable human carcinogen's ", and that " To a reasonable degree of scientific certainty that glyphosate and glyphosate formulations cause NHL in humans ." pp. 12/5 PROMDSJM No specific scientific evidence was stated for this conclusion, nor was it stated, or not, that Dr. Jameson had known earlier.

53. Before October 27, 2017, another Lymphoma Oncologist, Dr. Chad Nabhan, who claims to have treated 30 Lymphoma patients per week in Chicago, up to 2016,, a very large amount, too late for Plaintiff's to avoid cancer, using "Bradford Hill Criteria ", concluded that " Weight of scientific evidence supports causality between Roundup, glyphosate exposure and NHL ." pp. 12/5 PROMDSJM No specific scientific evidence was stated for this conclusion, nor , was it stated, or not, that DR. Nabhan had known this earlier  Was it Dr. Nabhan's knowledge of treating 30 NHL patients per week part of his basis for his conclusion ? Had he discussed his knowledge of Roundup causing NHL with those patients ? Why had this knowledge not been revealed earlier or not, by these scientists ?

54. Before October 27, 2017, Pathologist, Dr. Dennis Weisenberger, too late for Plaintiff's to avoid cancer, using "Bradford Hill Criteria ", concluded that " To a reasonable degree of 'medical ' certainty that glyphosate and glyphosate formulations (including Roundup) can cause NHL in humans exposed to these chemicals in their workplace or environment . " pp. 13/6 PROMDSJM  No specific factual "medical " evidence was stated for this conclusion , nor was it stated, or not that Dr. Weisenberger had known this earlier.

55. Before October 27, 2017, Epidemiologist, Dr. Aaron Blair, too late for Plaintiff's

p.16

0D938 - G53 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

to avoid cancer , explained at his 2017 deposition how " He weighed totality of later studied epidemiology studies supporting his opinion that glyphosate is a probable carcinogen ," pp. 13/ 6 PROMDSJM No specific evidence (Scientific studies) were stated for this explanation , nor how those studies had been explaned by their earlier authors , nor was it stated , or not , that Dr. Blair had known this earlier .

56 . Associate Professor of Veterinary Medicine , Dr. Matthew Ross , too late for Plaintiff's to void cancer , in association with Dr. Blair , , explained " Why strong evidence that glyphosate is genotoxic and causes oxidative stress are relative to carcinogenicity in humans . " pp . 14/6 PROMDSJM No specific evidence was stated for this explanation , nor how those studies had been explained by their earlier authors , nor was it stated , or not , that Dr. Ross had known this earlier .

57 . Regardless of these conclusions /explanations of history of knowledge of Roundup causing NHL , there was a general agreement that Roundup causes NHL , but , Plaintiff's are only now learning of this history .

FRAUD /FRAUDULENT MISREPRESENTATIONS/ CONCEALMENTS

58. Donna Farmer stated in 1999 that she(And Defendants) would not study glyphosate formulations or other ingredients(Polyethoxylated tallow amine )to determine if Non Hodgkins Lympholoma was a side affect . Defendant is continuing to conceal facts from Plaintiff since before 1999 , thru 2015 , and even to 2017 .Plaintiff is still seeking settlement after September . 2017 in attempt to minimize court costs . Defendant continues to show disinterest in learning or not that Roundup and its ingredients was risky and caused cancer including Non Hodgkins Lymphoma .

p 17

0D938 - G54 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

59. Defendant is estopped from relying on any particular statute of limitations because of Defendants intentional concealment of facts.

60. Even though Donna Farmer claimed that " You can not say that Roundup is not a carcinogen ", Defendant took no further action, whatsoever, until some time between 2014 and 2016 to study whether or not Roundup still is a cause of Non Hodgkins Lymphoma, and other cancers.

61. Defendant still objects to Judge Vince Chhabria's judicial order to warn even though California government had ruled recently that Defendant must " warn " within one year, by July , 2018.

62. In a 1st element, Defendant concealed above facts, and others, and continues to conceal facts, daily, material to Plaintiff's claim, stated by Toxicologist Donna Farmer historically recording internally that " You can not say that Roundup is not a carcinogen ." Donna Farmer and William F. Heydens were warning Defendant Hugh Grant from within. It was Defendant Hugh Grant, et. al, of Monsanto Board who falsified over many years by Defendants " puffings ".

63. In a 2nd element, it was Defendant who had knowledge of falsity and was that person making such representations and/ or statements that were made with such utter disregard and recklessness that knowledge is inferred.

64. In a 3rd element, Defendant intended to lead others into relying on those false representations.

65. In a 4th element, Plaintiff had a right to and absolutely did so rely on those false representations by Defendant.    p 18

0D938 - G55 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

66. In a 5th element, Plaintiff was injured by relying on such false representations by Defendant. And, Plaintiff continues to be injured because Plaintiff is not "In remission".

67. In a 6th, rather than 5 elements, Plaintiff makes a 6th claim that Defendant made false representations of material facts. It was not necessary that Defendant actually knew that Defendant's statements were false, but, Defendant did know that such statements were false, where Defendant made positive statements and circumstances were such that Defendant making those statements should have known whether such statements were true or false.

## EXEMPLARY DAMAGES

68. Plaintiff incorporates herein by reference each and every claim and fact set forth in preceeding pages as if fully stated herein.

69. Defendants conduct herein was done with oppression, and malice, and by misleading Plaintiff.

## JURY TRIAL DEMAND

70. Plaintiff waves a trial by jury on all triable questions within unless Defendant does not agree to settle.

## RELIEF REQUESTED

71. WHEREFORE, Plaintiff requests this Court enter judgment on its own motion in Plaintiff's favor and against Defendant, awarding Plaintiff. Plaintiff primarily seeks damages for medical payments resulting from treatment of Waldenstrom's Macroglobulinemia, a very rare Non Hodgkins Lymphoma, stated below :

   a. actual or compensatory damages in such amount determined by settlement.

   b. exemplary and punitive damages sufficiently punishing and deterring Defendant and others from future fraudulent misrepresentations.

0D938 - G56 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Dec 14 2:43 PM-17CV011000

c . pre-judgment and post -judgment interest

d . costs , and possible pro se fees , this was an effort for Plaintiff

e . any other relief this COURT may forsee

## AFFIDAVIT

Ralph A. Applegate , being 1st duly sworn , hereby states that statements herein this claim , are certified that to best of Plaintiff's knowledge and belief , formed after an inquiry under its circumstances , are true . Plaintiff is filing now because Defendant has made no movement , whatsoever , since September 22 , 2017 , to meet and attempt to settle Plaintiff's claim , period .

Signed _____
Respectfully submitted
Ralph A. Applegate , Plaintiff , Pro Se .
1544 Zettler Road
Columbus , Ohio 43227
914-410-1568
rapplegate48@gmail.com

Sworn to and subscribed before me this _____ day of December , 2017 .

Signed _____
Notary Public

My commission expires __November 16, 2021__

MARISSA DAVIS
NOTARY PUBLIC, STATE OF OHIO
FRANKLIN COUNTY
My Commission Expires 11/16/2021

p.20